IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO.  1:26-cv-1886

STEPHANIE BAEZ,
An individual residing at,
110 Silkwood Ct. SW, Huntsville, AL 35824

JOSHUA BLACK,
An individual residing at,
252 Walnut Street, Leeds, AL 35094

GLENN BROOKS,
An individual residing at,
826 24th Ave., Vero Beach, FL 32960

LLOYD CRUZ, JR.,
An individual residing at,
8980 Green Cove Drive, Polo, MO 64671

TRENISS EVANS, III,
An individual residing at,
451 Watts Lane, Canyon Lake, Texas 78133

DEREK GUNBY,
An individual residing at,
213 Rock Creek Road, Anderson. SC 29625

ANDREW MILLARD,
An individual residing at,
PO Box 1062, Bedford, IN 47421

KENNETH JOSEPH THOMAS,
An individual residing at,
1110 Pope Ave., East Liverpool, OH 43920

JOHN GEORGE TODD, III,
An individual residing at,
1631 battleground Rd., Cowpens, South Carolina 29330

Plaintiffs,

v.

UNITED STATES OF AMERICA,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

ANTHONY CAMPANELE,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

SAM UKYLEE,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

FBI AGENT LUCAS,
 950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

FRANCESCO VALENTINI,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

CHRISTOPHER BROWN,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

SETH ADAM NEINERO,
 950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

EMILY ALLEN,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

ERIC BOYLAN,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

BARRY DISNEY,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

SAMANTHA MILLER,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

2

SEAN MCCAULEY,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

     Defendants.

_____/

,

**CORRECTED COMPLAINT UNDER THE FEDERAL TORT CLAIMS ACT, BIVENS AND 42 U.S.C. §1983 AND FOR VIOLATION OF CIVIL RIGHTS AND DEMAND FOR TRIAL BY JURY**

The Plaintiffs, Stephanie Baez ("Baez"), Joshua Black ("Black"), Glenn Brooks ("Brooks"), Lloyd Cruz, Jr. ("Cruz"), Treniss Evans III ("Evans"), Derek Gunby ("Gunby"), Andrew Millard ("Millard"), Kenneth Joseph Thomas ("Thomas"), and John George Todd, III ("Todd"), by and through their undersigned attorneys, hereby bring suit against The United States of America, Merrick Garland, former Attorney General of the United States of America,  Anthony Campanele, Sam Ukylee, FBI Agent Lucas, Francesco Valentini, Christopher Brown, Seth Adam Neinero, Emily Allen, Eric Boylan, Barry Disney, Samantha Miller, Sean McCauley (all in their individual capacities), pursuant to the Federal Tort Claims Act ("FTCA"), 28 18 U.S.C. § 1346(b), 2671–2680, Bivens, and 42 U.S.C. §1983 for injuries the Plaintiffs sustained in the course of crowd control, property management, property bailment, investigation, targeting, arrest, prosecution, imprisoned, and all other related injuries and losses relating to the protest on January 6, 2021, on the grounds and/or within the United States Capitol Building, and state as follows:

**Parties**

1.  The Plaintiff, Stephanie Baez, is an induvial residing at 110 Silkwood Ct SW, Huntsville AL 35824.

2.  The Plaintiff, Joshua Black, is an individual residing at  252 Walnut Street, Leeds

3

AL 35094.

3.     The Plaintiff, Glenn Brooks is an individual residing at 826 24th Ave., Vero Beach FL 32960.

4.     The Plaintiff, Lloyd Cruz, Jr., is an individual residing 8980 Green Cove Drive Polo MO 64671.

5.     The Plaintiff, Treniss Evans, III, is an individual residing at 451 Watts Lane Canyon Lake Texas 78133.

6.     The Plaintiff, Derek Gunby, is an individual residing at 213 Rock Creek Road Anderson SC 29625.

7.     The Plaintiff, Andrew Millared, is an individual residing at PO Box 1062, Bedford, IN 47421.

8.     The Plaintiff, Kenneth Joseph Thomas, is an individual residing at 1110 Pope Ave., East Liverpool, OH 43920.

9.     The Plaintiff, John George Todd, III, is an individual residing at 1631 battleground Rd., Cowpens, South Carolina 29330.

10.     The Defendant, United States of America, is represented by the United States Attorney's Office for the District of Columbia, located at 950 Pennsylvania Avenue, N.W. Washington D.C. 20530.

11.     The Defendant, Anthony Campanele, is represented by the United States Attorney's Office for the District of Columbia, located at 950 Pennsylvania Avenue, N.W. Washington D.C. 20530.

12.     The Defendant, Sam Ukylee, is represented by the United States Attorney's Office for the District of Columbia, located at 950 Pennsylvania Avenue, N.W. Washington D.C. 20530.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

13. The Defendant, FBI Agent Lucas, is represented by the United States Attorney's Office for the District of Columbia, located at 950 Pennsylvania Avenue, N.W. Washington D.C. 20530.

14. The Defendant, Francesco Valentini, is represented by the United States Attorney's Office for the District of Columbia, located at 950 Pennsylvania Avenue, N.W. Washington D.C. 20530.

15. The Defendant, Christopher Brown, is represented by the United States Attorney's Office for the District of Columbia, located at 950 Pennsylvania Avenue, N.W. Washington D.C. 20530.

16. The Defendant, Seth Adam Neinero, is represented by the United States Attorney's Office for the District of Columbia, located at 950 Pennsylvania Avenue, N.W. Washington D.C. 20530.

17. The Defendant, Emily Allen, is represented by the United States Attorney's Office for the District of Columbia, located at 950 Pennsylvania Avenue, N.W. Washington D.C. 20530.

18. The Defendant, Eric Boylan, is represented by the United States Attorney's Office for the District of Columbia, located at 950 Pennsylvania Avenue, N.W. Washington D.C. 20530.

19. The Defendant, Barry Disney, is represented by the United States Attorney's Office for the District of Columbia, located at 950 Pennsylvania Avenue, N.W. Washington D.C. 20530.

20. The Defendant, Samantha Miller, is represented by the United States Attorney's Office for the District of Columbia, located at 950 Pennsylvania Avenue, N.W. Washington D.C. 20530.

21. The Defendant, Sean Mccauley, is represented by the United States Attorney's Office for the District of Columbia, located at 950 Pennsylvania Avenue, N.W. Washington D.C.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

20530.

## Jurisdiction and Venue

22.     This Court has subject-matter jurisdiction pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (FTCA) and 28 U.S.C. § 1331 (federal question), and pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and its line of cases pertaining to federal constitutional rights.

23.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1402(b) because most of the acts and omissions giving rise to the Plaintiffs' claims occurred in this District, where the prosecutions were initiated, investigated, and litigated.

## Exhaustion Of Administrative Remedies

24.     Pursuant to 28 U.S.C. §2675(a), all of the Plaintiffs timely filed administrative claims with the United States, the Federal Bureau of Investigation or other appropriate federal agencies.  The Plaintiffs have fully exhausted all administrative remedies required by the Federal Tort Claims Act (FTCA).  More than six months have elapsed since the presentment of those claims without final disposition by the agencies, or the claims were denied.

## The Plaintiffs

25.     Baez is a citizen of the state of Alabama, spent almost three years charged with four misdemeanors related to the events at the Capitol on January 6, 2021 (hereinafter the "J6 Events." However, just days before her scheduled misdemeanor trial, the Defendants vindictively charged her with a false 20-year felony, 18 U.S.C. §1512, in retaliation for Baez' rejecting the Defendant's petty-misdemeanor plea offers.  At that time, counsel for Baez had extensively informed the prosecutors that §1512 was not applicable.  Baez suffered four miscarriages during the ordeal. (The Defendants refused to drop the frivolous §1512 charge even after the Supreme Court struck

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

down the statute on June 28, 2024, as applied to demonstrations in *Fischer v. United States*; and Baez was ultimately acquitted at trial without presenting any evidence.)

26.    Black is a citizen of Leeds, Alabama.  On January 6, 2021, Black's mouth and cheek were blown apart by a police projectile unlawfully aimed at his head by Capitol Police or Metropolitan Police.  Black now suffers from lifelong injuries and permanent scarring.  Black was subsequently wrongfully and maliciously charged with felonies and misdemeanors, wrongly convicted, and sentenced to 22 months in prison based in part on the Defendants' false statements, Brady violations and fabricated evidence.

27.    Brooks is a citizen of California, and he was charged with J6 misdemeanors; but prosecutors under the direction of Graves and Garland vindictively threatened to falsely charge Brooks with false felony gun charges relating to the J6 Events to prevent Brooks from defending himself.  The Defendants threatened the false charge simply because Brooks had made two gun purchases immediately before 1/6/21.)  The arresting officers broke and damaged Brooks' property during the arrest.  Brooks' wife served Brooks with divorce papers 5 weeks after arrest due to the arrest.  Although Brooks' case was dismissed with prejudice, he sought certiorari to the Supreme Court in efforts to revive his dismissed appeal.

28.    Cruz is a citizen of Polo, Missouri.  On January 6, 2021, Cruz was identified as being at the Capitol at the J6 Events by the largest general warrant in history, a so-called geofence warrant aimed at finding every cell phone number near the Capitol based on no other probable cause.  Cruz was subsequently charged with misdemeanors related to the events, convicted, and sentenced to 45 days in jail based in part on the Defendants' false statements.  (Cruz' appeal was vacated due to the pardon proclamation.)

29.    Evans is a citizen of the State of Texas.  Evans was wrongly prosecuted for

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

obstructing an official proceeding and coerced into pleading guilty to a misdemeanor relating to the J6 Events. Evans and his wife were both placed on terror watch lists and flight restrictions. Evans was further subjected to unconstitutional and unlawful actions by the Defendants, as detailed below.

30.     Gunby is a citizen of South Carolina. Like Baez and Todd, Gunby spent over two years charged with four misdemeanors, but The Defendants filed a superseding indictment with a retaliatory bogus 20-year felony just prior to Gunby's trial because Gunby refused to plead guilty.

31.     Millard is a citizen of the State of Indiana. Millard's barber shop was surveilled and harassed continuously by FBI agents. One FBI agent intercepted Millard's cell phone without warrant while posing as a customer. These were all due to alleged misdemeanors at the Capitol at the J6 Events.

32.     Thomas is a citizen of the State of Ohio and resides in East Liverpool, Ohio. Thomas never went inside the Capitol but was charged with obstructing an official proceeding nonetheless; as well as multiple counts of assaulting officers (for momentary brushes against police shields or armor). When Thomas refused to plead guilty he was charged with additional felonies. Prosecutors presented false testimony at Thomas' trial, including false testimony that Thomas had cut a tarp at the Capitol and false testimony that Thomas had knocked a police officer to the ground. Although the jury acquitted Thomas of the malicious obstruction charge, Thomas was sentenced to almost 5 years imprisonment as if he had been convicted for those offenses.

33.     Todd is a citizen of the state of Virginia. Like Baez and Gunby, Todd was charged with misdemeanors for some three years. Then, shortly before his misdemeanor trial, Todd was charged in retaliation by the Defendants with contrived 20-year felonies. At Todd's trial a juror reported to the judge that fellow jurors were improperly considering outside evidence to convict

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

Todd; but the Defendants did nothing.  Todd was sentenced to five years in federal prison.  Todd attempted suicide twice during the ordeal and lost his wife and child.

## The Defendants

34.    The Defendant United States of America is sued under the FTCA for the tortious acts and omissions of its employees, including The Defendants Garland, Wray, and Graves, and others, acting within the scope of their federal employment.

35.    The Defendant Merrick B. Garland ("Garland") was the Attorney General of the United States from March 11, 2021 to January 20, 2025, responsible for overseeing the U.S. Department of Justice (DOJ).  Garland was, at all relevant times, the ultimate supervisor of all federal law enforcement, criminal investigations, and prosecutions.  He personally directed, approved, and failed to train or supervise the selective, malicious, and vindictive prosecution of Defendants related to J6 Events, including those of the Plaintiffs, and established or ratified the policy of retaliatory superseding indictments.  He is sued in his individual capacity for actions taken under color of federal authority.

36.    The Defendant, Christopher Wray, was the Director of the FBI at all relevant times. He personally directed and oversaw the FBI's investigation and targeting of participants of J6 Events, including the Plaintiffs, in coordination with the DOJ.

37.    The Defendant Matthew Graves was, at all relevant times, the United States Attorney for the District of Columbia and directly supervised the line prosecutors handling J6 Events cases in the District.  He personally directed or acquiesced in the policy and custom of vindictive and malicious prosecutions, including the routine practice of superseding misdemeanor charges with felonies against the J6 defendants who refused to plead guilty and exercised their right to trial.  Graves failed to train or supervise prosecutors to prevent this unconstitutional

9

retaliation.  He is sued in his individual capacity.

38.    The Defendant Francesco Valentini was an Assistant U.S. Attorney (AUSA) at all relevant times.  Valentini prosecuted and tormented J6ers and supervised the prosecution of J6ers, including Treniss Evans.  Valentini spent much effort monitoring social media of J6ers and their defense counsel, notifying courts when J6ers or their counsel tried to alert the public regarding the injustice of J6 persecutions.

39.    ANTHONY CAMPANELE was at all relevant times, an officer in the Metropolitan Police Department for the District of Columbia.  He is sued in his individual capacity.

40.    SAM UKYLEE was at all relevant times a special agent for the FBI.  He is sued in his individual capacity

41.    FBI AGENT LUCAS was, at all relevant times, and FBI agent stationed in Texas. He is sued in his individual capacity

42.    CHRISTOPHER BROWN was, at all relevant times, an Assistant U.S. Attorney in the District of Columbia.  He is sued in his individual capacity,

43.    SETH ADAM NEINERO was, at all relevant times, an Assistant U.S. Attorney in the District of Columbia.  He is sued in his individual capacity,

44.    EMILY ALLEN was, at all relevant times, an Assistant U.S. Attorney in the District of Columbia.  She is sued in her individual capacity,

45.    ERIC BOYLAN was, at all relevant times, an Assistant U.S. Attorney in the District of Columbia.  She is sued in her individual capacity,

46.    BARRY DISNEY was, at all relevant times, an Assistant U.S. Attorney in the District of Columbia.  He is sued in his individual capacity,

47.    SAMANTHA MILLER was, at all relevant times, an Assistant U.S. Attorney in the

10

District of Columbia.  She is sued in her individual capacity

48.    SEAN MCCAULEY was, at all relevant times, an Assistant U.S Attorney in the District of Columbia.  He is sued in his individual capacity,

**Factual Allegations**
**A horror story like few others in American history**

49.    The Plaintiffs are citizens of different states who traveled to Washington, D.C. on or around January 6, 2021 ("January 6" or "J6") in general support of President Donald Trump.[1] They attended speeches and rallies and went to the U.S. Capitol to attend additional speeches and to protest, rally, and petition for redress of grievances.

50.    In most ways the J6 protest demonstrations were similar to hundreds of other rallies and protests at the Capitol over generations.  Under well-settled state and federal law, demonstrators at capitols and legislative assemblies were to be allowed to speak freely and be given avenues for expressing and demanding redress.[2]  Even if accused of trespassing or other misdemeanors, protestors must be given multiple warnings and opportunities to depart or comply with commands.[3]

---

[1] Note that motivations varied widely, and some The Plaintiffs were motivated more by a need to raise awareness regarding various issues including public health overreach and/or election integrity generally.

[2] See D.C. Law, Ch.  3A § 5–331.03.  Policy on First Amendment assemblies.  "It is the declared public policy of the District of Columbia that: (1) Persons and groups have a right to organize and participate in peaceful First Amendment assemblies .  .  .  and to engage in First Amendment assembly near the object of their protest so they may be seen and heard. .  ." (2) "MPD shall not engage in mass arrests of groups that include First Amendment assemblies or that began as a First Amendment assembly unless MPD: .  .  .  .
(B) Has issued an order to disperse .  .  ." See also ACLU, Demonstrating in D.C.: Know Your Rights (2025); Metropolitan Police Department, First Amendment Demonstrations (2021).

[3] *See, e.g., Adderley v. Florida*, 385 U.S.  39 (1966) (upholding trespassing convictions for student protestors at a jail; but unanimously stating that such protesting at a legislative capitol would be a

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

**A Pipe Bomb fairy Tale, a "Gallows" Constructed with Government Permission, and a scaffold commander urging protestors to move forward.**

51.     However, upon arrival at the Capitol on January 6, 2021, the Plaintiffs found themselves in a confusing setting, with no signs regarding scheduled events and few visible law enforcement officers.  A cheaply constructed "gallows" with a hanging noose was erected by never-identified person(s) with apparent government permission.[4]

52.     Although there were sections of minor fencing erected on the grounds early on January 6, that fencing was mostly removed by afternoon, and most of the Plaintiffs freely strode upon the Capitol Grounds without any obstructions or notice of restricted zones.  (Even though Capitol police officials would later falsely testify at trials—at the direction of the Garland DOJ— that the Capitol's parameter was fortified in near-fortress-like security.)

53.     Within minutes of the beginning of Congress' scheduled election certification proceedings, government officials announced that "pipe bombs" had been found at nearby Republican- and Democratic-National Committee headquarters.  This constantly changing story[5] involved agents of the Capitol Police, Vice President-Elect Kamala Harris, and the Secret Service.

---

defense to trespassing charges); *Edwards v. South Carolina*, 372 U.S. 229 (1963) (ruling that the First Amendment forbade state government officials to force a crowd to disperse when they are otherwise legally marching in front of a state capitol).

[4] Note that the gallows qualified as an installation and required a permit for placement on the Capitol Mall.  The installation took more than an hour to set up, during morning hours before large crowds arrived.

[5]     Christopher Wray's FBI fabricated or doctored video and released fabricated slowed-down, deliberately-grainy footage of the "pipe bomber" to the public so as to prevent 'solving the crime' (while Wray's FBI purportedly offering a large reward for the supposedly-elusive 'bomber').  The "pipe bombs" themselves resembled stock dummy devices with less-than-one-hour kitchen timers. Private journalists later showed that Capitol Police bomb squad members knew precisely where to look for the "bombs"—obviously having foreknowledge.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

The pipe bomb announcement triggered evacuations, closures, and shelter-in-place orders which ultimately culminated in a six-hour delay of Congress.

54.    Around 1 pm, many of the Plaintiffs witnessed numbers of provocateurs shouting to "Go! Go! Go!" and commanding the crowds to move forward.  One never-identified instigator, the "scaffold commander" positioned himself on a scaffold tower with a megaphone, shouting at thousands to move closer and enter the Capitol.  Another never-identified instigator, wearing a red "MAGA" cap with a price tag still affixed, broke and smashed the first window of the Capitol on the west side, to allow agitators or demonstrators to climb through windows.

55.    Upon information and belief, the identity of these instigators has been known to Wray's FBI for years; and these instigators have been under Wray's and Garland's protection.[6] Also, upon information and belief, the paucity of law enforcement security on January 6 was quite deliberate.

56.    As events unfolded on the Capitol's west side, Capitol police officers on the *east* side engaged in trickery with crowds of protestors, promising crowds (sometimes over megaphones) that police would try to help protestors approach more closely to the Capitol doors. When J6ers saw barriers removed on the east plaza, the protestors rushed forward, thinking officers had approved their advancement to the steps of the Capitol.  (Nonetheless, the Plaintiffs were later charged with crimes for doing so.)

---

[6]    Another similar example involves a mysterious man wearing a gas mask who pushed J6er Will Pope into the Capitol at the east side's carriage doors.  Just as with Scaffold Commander, MAGA-hat guy and the pipe bomber, Garland's DOJ prosecutors claimed they possessed no information about the man who pushed Pope inside the building (making Pope the first J6er to breach the east side).  However, after three years and much diligent research by Pope, DOJ admitted that the gas-mask wearing individual was known to the government and that the individual possessed a federal security clearance.  See https://x.com/FreeStateWill/status/2006853257902305719 (accessed 1/2/2025).

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

57.     When Capitol Police on the Capitol's west side, repeatedly used lethal force[7] on protesters, the festive atmosphere quickly changed.  Graphic, bloody injuries to the Plaintiff Joshua Black's face by Capitol Police enraged the crowd and led to an escalation of violence in reaction and self-defense.

58.     During the events of that day, federal law-enforcement officers, including but not limited to officers of the United States Capitol Police and other federal agents, deployed chemical irritants (including pepper spray and tear gas), batons, flash-bang devices, and other less-lethal munitions against the Plaintiffs and the crowd without justification and in a manner that was excessive, unreasonable, and in violation of the Plaintiffs' rights.

59.     As a direct and proximate result of unlawful use of force, Black suffered lifelong injuries, chemical burns to eyes and respiratory system, contusions, lacerations, and exacerbation of pre-existing conditions.

60.     Thomas suffered chemical exposure, blunt-force trauma, respiratory distress, and other physical harm.  Baez, Evans, Gunby, Brooks, Todd, Millard and Cruz suffered respiratory distress and other physical harm.

**The largest general search warrants in American history.**

61.     Soon after January 6, 2021, the Defendants Garland, Graves, and Wray violated Fourth Amendment limitations in their investigations of J6ers.  These Defendants crafted and used the largest and most general search warrants in history to identify every cell phone at the U.S. Capitol on January 6, 2021.  The warrant(s) were so general that they didn't even try to state

---

[7] Capitol and Metro police officers, including Shauni Kerkhoff and Anthony Campanele, used "less than lethal" weaponry such as pepper ball guns in a manner that was lethal under the law, rules and training.  For example, these officers shot J6ers such as Joshua Black in the face, neck, or groin.

14

suspicion that any individual committed any specific crime, as the Constitution requires. Rather, the warrants simply listed a menu of ten-to-twelve possible crimes (including crimes which never occurred such as murder of a federal officer) and alleged that possessors of cell phones were either perpetrators or witnesses of such crimes. The Defendants used these unlawful search warrants to find and identify the Plaintiffs in this case, including Cruz, despite having no probable cause at the time.

**Government-funded Vigilante Investigators**

62.     Wray's FBI also funded and provided illegal material support to a private vigilante group, "the Sedition Hunters," who worked to identify and investigate J6ers by both legal and illegal means. Among other things, Wray's FBI violated court orders by providing Sedition Hunters with court-protected discovery. The Plaintiffs Baez and Thomas were identified by this secretly-government-funded vigilante group. Sedition Hunters also unlawfully harassed and stalked J6ers and their employers and associates.

**The DOJ's "Tip Line"**

63.     In addition to using the largest general warrant(s) in history and fueling private vigilante groups, Garland's and Graves' DOJ also established a "tip line" to gather information regarding J6ers.

> In the 40 months since Jan. 6, 2021, more than 1,424 individuals have been charged in nearly all 50 states for crimes related to the breach of the U.S. Capitol, including more than 500 individuals charged with assaulting or impeding law enforcement, a felony. The investigation remains ongoing.
>
> Anyone with tips can call 1-800-CALL-FBI (800-225-5324) or visit tips.fbi.gov.
>
> *Updated June 5, 2024*

Screenshot of bottom of DOJ press release, June 5, 2024, indicative of hundreds of other similar press releases asking the public to help identify and round up J6ers in a national security effort. https://www.justice.gov/usao-dc/pr/houston-man-sentenced-prison-assaulting-law-

15

enforcement-dangerous-weapons-during-jan-06 (accessed 9/2/2025).

**Savage, militarized, Pre-dawn SWAT-style tactical arrests over misdemeanors, even for those whose lawyers said they would self-surrender**.

64.     The Defendant FBI director Christopher Wray and the Defendant Attorney General Merrik Garland directed that FBI agents be diverted from serious, violent and sexual crime investigations to focus on misdemeanor January 6 investigations.[8]  In many cases (including the case of the Plaintiff Evans), J6ers were subjected to early morning paramilitary arrest raids despite previously contacting FBI through attorneys to arrange peaceful meetings or surrenders.  Evans was subjected to a massive paramilitary arrest raid and extensive search and seizure at his home in southern Texas on March 4, 2021.  One agent provocatively charged at Evans, saying falsely that 'J6ers had beaten a member of law enforcement to death with a fire extinguisher' (a false narrative being spread by Garland and other Defendants at the time).  Agents aimed guns directly at Evans' family, including an underage son.

65.     Prior to January 6, 2021, most FBI agents had never arrested anyone for misdemeanors (as such offenses are generally initiated by citations).  However, the Defendants Wray and Garland, implementing the "shock and awe" program—directed that armored FBI, HSI and paramilitary SWAT-style tactical teams descend on accused J6 misdemeanants including Evans, Todd, Gunby, Baez, and Brooks with actual armored personnel carriers and other military equipment.  Wray and Garland directed that these raids be conducted in a terrifying manner, with explosives and battering rams and teams of agents displaying masks, helmets, body armor, and semi-auto and automatic rifles.[9]

---

[8] Note that such staffing decisions are administrative, rather than prosecutorial, decisions.

[9]     Upon information and belief, no accused J6er (out of more than 1,500) offered any violent resistance or obstruction during these arrests and abusive raids.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

66.    Wray's agents smashed and tore off the Plaintiffs' doors and gates, using flashbang grenades to traumatize the Plaintiffs.  The Plaintiffs Brooks, Todd and Gunby, among many others, had the doors of their residences blown off, broken or destroyed during the terrifying raids.  The FBI used a robotic battering ram on Gunby's door—over nonviolent misdemeanor charges. Gunby's home was raided by an excessively large force of FBI and other agents with armored vehicles on August 10, 2021.  Gunby's parents were handcuffed in their underwear and Gunby's mother's phone was wrongfully seized.  During these raids, J6ers and their family members (including young children) had guns aimed directly at them.

67.    Brooks was subjected to a SWAT-style raid at 6 am July 29, 2021, by some 18 agents under the direction of the Defendants.  The agents shattered the glass in Brooks' front door and damaged Brooks' priceless family heirloom Revolutionary War pistol handed down from his Revolutionary War ancestor John Brooks.  The pistol was considered a museum piece and was the subject of negotiations with a museum at the time.

**Overzealous prosecution as "national security."**

68.    Although tortious acts by prosecutors in the normal course of advocacy are protected by absolute immunity, the prosecutors in the cases involving J6 Events acted as *administrators, investigators, national-security generals, or false propagandists* and became subject to civil liability for their conduct—protected only by qualified immunity.  Garland, Graves, Wray and the other Defendants gave countless public statements describing the J6 demonstration, not as advocacy, petitioning or protest, but as an "attack" on the Capitol, on Congress, and even on democracy itself.  These Defendants peppered their pleadings, complaints and arguments with

17

national security justifications and language.[10]  In accordance with this "national security" artifice, these Defendants spent the next four years feverishly preventing J6ers from arguing or even invoking the protections of the 1st Amendment to the U.S. Constitution.

69.    Each J6 criminal prosecution began with government motions for protective orders, based on 'national security' grounds.  The motions prevented J6ers (or even judges) from discovering the DOJ's concealed deceptions and fabrications, and prevented the public from assisting J6ers.  The DOJ proclaimed that the locations of overhead cameras at the Capitol, which millions of people had seen while touring the Capitol, were so top secret that "national security" would be jeopardized if J6ers were able to share surveillance camera footage with the public.

70.    Upon information and belief, the Defendants' true reason for demanding the protective orders was to keep the public from being able to identify undercover operators in the J6 crowds; which would have revealed the true scope of government entrapment and government distortion.

**The "Capitol Siege" Section and the application of military language to J6 investigations.**

71.    The Defendants named the DOJ unit prosecuting the J6ers the "Capitol Siege section," using terminology rooted in military strategy with no criminal-law meaning.[11]  They

---

[10]See Luke Barr and Alexander Mallin, "AG Garland testifies Jan.  6 insurrection was 'most dangerous threat to our democracy," *ABC News*, May 12, 2021 ("Attorney General Merrick Garland told the Senate Appropriations Committee on Wednesday that he has not seen a more dangerous threat to democracy than the "invasion" of the Capitol on Jan.  6, which he called in written testimony a "heinous attack" and "intolerable assault.")

[11] A siege refers to a military operation in which armed forces surround a place—usually a fortified city or stronghold—with the goal of cutting off essential supplies and forcing the enemy to surrender.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

established a website for the "Siege" section.[12]   That unit loaded its charging documents with military language, referring to J6ers as "insurrectionists" and focused on "breaches" of "perimeters," and "storming" the Capitol.  DOJ pleading constantly referred to the demonstration as "the attack" on the Capitol.

72.    Graves, Garland, and other Defendants turned J6 prosecutions into acts of partisan warfare.  They invited DOJ lawyers who politically opposed Trump and MAGA conservatives to relocate to D.C. and "join this mission" because they "believed in the defense of democracy."[13] Those prosecutors viewed their investigations, not as justice inquiries into crimes, but as a "criminal inquiry into efforts to stop the peaceful transfer of power."[14]

---

[12] https://www.justice.gov/usao-dc/capitol-breach-investigation-resource-page (now defunct).

[13] Ryan J.  Reilly, "Jan 6 prosecutors describe 'shocking' 'gutteral' week after Trump's pardons," NBC News, Jan.   24, 2025, https://www.nbcnews.com/politics/justice-department/jan-6-prosecutors-describe-shocking-guttural-week-trumps-pardons-rcna188970 (accessed 10/1/2025).

[14] Ryan J.  Reilly, "As Jan 6 probe expands, officials worry DOJ resources are at a breaking point," NBC News, July 29, 2022.   https://www.nbcnews.com/politics/justice-department/jan-6-probe-expands-officials-worry-doj-resources-are-breaking-point-rcna40208 (accessed 10/1/2025).

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

**Involvement of the "National Security Division"[15]:**

73.     Garland, Graves, and the other Defendants collaborated with the "National Security Division's Counterterrorism Section on many J6 prosecutions, treating the cases as counterterrorism efforts.[16] Garland, Graves, and other Defendants explicitly pronounced that J6 verdicts were obtained through the "National Security Division's Counterterrorism Section."[17] J6 convictions were described as *battlefield victories*. DOJ spokesmen proclaimed that the DOJ was bringing "accountability to [J6ers] who attacked our democracy on January 6 Defendants' use of the Joint Terrorism Task Force invoked national security weaponry over matters that had nothing to do with terrorism.

**Selective Targeting and Persecution of J6ers**

74.     Over the years, similar demonstrators at the Capitol had been punished with $25 or $50 fines, even for protestors who forcefully occupied Capitol spaces and resisted orders to leave or remove them. However, the Defendants in this case selectively prosecuted the Plaintiffs herein with unique charges never applied in similar circumstances, vindictively escalated to life-crushing

---

[15] Note that the DOJ's "National Security Division" has a stated mission which strays markedly from a pure prosecutorial mission: "The mission of the National Security Division is to protect the United States from threats to our national security by pursuing justice through the law. The NSD's organizational structure is designed to ensure greater coordination and unity of purpose between prosecutors and law enforcement agencies, on the one hand, and intelligence attorneys and the Intelligence Community, on the other, thus strengthening the effectiveness of the federal government's national security efforts."

[16] For example, in a January 6, 2025, press release on the San Diego U.S. Attorney's Office's role, GARLAND's DOJ stated: "These cases are being prosecuted through a collaboration led by the U.S. Attorney's Office for the District of Columbia and the Department of Justice National Security Division's Counterterrorism Section."

[17] For example, GARLAND's November 7, 2023 press statement that "This case is being prosecuted by the U.S. Attorney's Office for the District of Columbia and the Department of Justice National Security Division's Counterterrorism Section."

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

felonies for most who insisted on trials.

75.    Similarly situated individuals, those who engaged in violence, property destruction, or disruption of government functions during 2020 protests, were not prosecuted with comparable vigor or at all.[18]  The selective enforcement was based on the Plaintiffs' political viewpoint and was orchestrated by people at the highest levels of the DOJ and FBI.

76.    These Defendants turned a routine Capitol protest and 6-hour delay[19] of Congress into the largest and most expensive investigation in world history, with an overarching aim of chilling and suppressing the expression of particular viewpoints and petitioning.  The Defendants fabricated evidence, concealed and withheld exculpatory evidence, made knowingly false statements in affidavits, reports, and official proceedings related to the Plaintiffs' prosecutions, and exaggerated, concocted and manufactured threats and injuries, to secure wrongful charges, convictions and sentencings.

77.    Note that the systematic targeting of a class of people due to affiliation with a politically unpopular or ousted ideology is administrative rather than prosecutorial conduct. *Reno v.  AADC*, 525 U.S. 471 (1999).

78.    Sentences for J6ers were by far the harshest in U.S. history for political protesting or demonstrating of any kind.  Indeed, upon information and belief, the longest prison sentences for J6ers were <u>multiple-times longer</u> than those for any comparably-situated political demonstrator

---

[18]    For example, a Trump-hating Democrat activist named Patricia Eguino openly picketed and paraded among the J6ers on the upper east balcony of the Capitol. The Defendants prosecuted dozens of pro-Trump J6ers around Ms. Eguino but never prosecuted Ms. Eguino because Ms. Eguino was a Democrat.

[19]    Note that other protests at the Capitol have shut down Congress for much longer periods. For example the Kavanagh confirmation protests in 2018 stopped and disrupted proceedings for days.  The May Day protests of 1970 also disrupted Congress for days.  The Bonus Army occupation of the 1930 shut down congressional proceedings for many days.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

or rioter in history. And the 1st, 2nd, and 3rd highest individual misdemeanor fines in U.S. history were all imposed on J6ers.[20]

79.     Wray's FBI illegally placed J6ers (and their families) on Terrorist Watch Lists and "SSSS" flight restrictions which subjected them to extra security measures during air travel.

80.     Upon information and belief, the United States de-banked and facilitated the debanking of J6ers so that J6ers were denied access to credit institutions.

81.     Acts such as spreading disinformation, imposing a program of shock-and-awe[21] pre-dawn paramilitary SWAT-style raids to terrify and traumatize arrestees (causing numerous suicides, attempted suicides and miscarriages), setting up a snitch line to maximize arrests and social division, deploying explosives against accused misdemeanants,[22] certifying the world's

---

[20] J6er Rebecca Lavrenz now holds the all-time record with a $103,000 fine. The second heaviest fine in history for a misdemeanor was levied on another J6er, Brady Knowlton ($75,000). Third place seems to be a tie with criminal The Defendant named Robert J. Brenna Jr. (New York) who paid a $25,000 fine in 2003 for violating the Clean Water Act (the highest until January 6. J6er Paul Johnson's $25,000 fine apparently tied Brenna's 2003 fine for third place.)

[21]   See Scott Pelley, "Inside the prosecution of the Capitol rioters," 60 Minutes, March 22, 2021 https://www.cbsnews.com/news/capitol-riot-investigation-sedition-charges-60-minutes-2021-03-21/  (accessed 5/19/2025) (Acting US Atty Michael Sherwin explained that "our office wanted to ensure that there was shock and awe …. And it worked because we saw through media posts that people were afraid to come back to D.C. because they're like, "If we go there, we're gonna get charged."; Jonathan Turley, "How Prosecutors Turned January 6 Rioters into Rioters," *New York Post*, Jan. 20, 2025,  https://nypost.com/2025/01/20/opinion/how-prosecutors-turned-january-6-rioters-into-martyrs/ (accessed 5/18/2025) ("The Justice Department set out to send a chilling message to the nation. In an interview with CBS News a year later, Justice Department official Michael Sherwin indicated that they wanted to send a message with the harsh treatment of The Defendants.").

[22] *See Burns v. Reed*, 500 U.S. 478 (1991) (prosecutors do not have absolute immunity when giving legal advice to police regarding investigative stages of case, as such conduct is more administrative/investigative).

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

most expansive general search warrants in history without probable cause,[23] materially supporting private vigilante groups to hunt down and torment suspected J6 demonstrators, throwing out settled pretrial detention standards to keep nonviolent J6ers behind bars without convictions,[24] placing Americans on watch lists, facilitating the de-banking of U.S. citizens, concealing and withholding the role and numbers of undercover government operatives and informants among demonstrators on January 6, applying constrained 20-year-prison "obstruction-of-official-proceeding" charges to political demonstrators, punishing the Defendants who refuse to plead guilty with retaliatory charges commanding 40-times-greater sentences, and threatening or arresting defense witnesses to prevent the Defendants from defending themselves are administrative, "national security," and investigatory conduct; not prosecutorial advocacy.

---

[23] See Kalina v. Fletcher, 522 U.S. 118 (1997) (certifying facts in an affidavit for probable cause was not entitled to absolute immunity—only qualified).

[24] In February 2021, the DOJ worked with Chief Judge Beryl Howell to create guidance for whether J6ers should be granted pretrial release: the "Chrestman 6" (or "Chrestman factors"). *United States v. Chrestman* (Case No. 21-mj-218). Howell granted the government's motion for review of a magistrate's pretrial release order, stayed the release, and ultimately ordered pretrial detention. The six factors were (1) felony or misdemeanor, (2) "the extent of the Defendant's prior planning," (3) whether the Defendant used or carried a weapon, (4) evidence of coordination with other protesters (5) whether the Defendant played a leadership role, and (6) the Defendant's words and movements during the riot. This framework helped keep nonviolent J6ers in jail indefinitely; J6ers needed to pled guilty or be held through trial. It was the first time an entire category of The Defendants were subject to special bail rules that didn't apply to others. And the *Chrestman* factors added factors for pretrial release beyond what the Bail Reform Act required. And the Bail Reform Act, 8 U.S.C. § 3142, enacted during the tough-on-crime Reagan presidency, was itself controversial for expanding pretrial detention. *See United States v. Salerno*, 481 U.S. 739 (1987).

23

**The Defendants' novel theories of law and abuse of statutes to maximize imprisonment of the Plaintiffs.**

82.    The Defendants used novel theories of law25 to target the Plaintiffs for false charges such as "obstruction of official proceedings" and "entering and remaining in a restricted area."

83.    While there are federal trespassing statutes which explicitly apply to the U.S. Capitol,26 such statutes provide only a petty offense and plainly exempt mere presence in public areas where most J6ers walked and demonstrated.  So, the Defendants Garland and Graves chose to use an ill-fitting Secret-Service "restricted area" statute, 18 U.S.C. § 1752(c)(B), to maximize penalties and imprisonments of the Plaintiffs.  However, § 1752 focuses on the authority of the Secret Service (SS) to create temporary restricted areas around certain federal protectees.

84.    The use of 18 U.S.C. §1752 required constant deception and fabrication of claims

---

[25] For example, many J6ers who merely walked or stood in places were convicted of "disorderly conduct" based on a theory (the "raindrop theory") that Jan.  6 protesters shared equal guilt for rioting, like raindrops that join to create a flood. *See, e.g., United States v.  Rivera*, 21-cr-60 (CKK), ECF No.  62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood.  Only when all of the floodwaters subside is order restored to the field.").  The government also used "Seditious Conspiracy" charges against Oath Keeper and Proud Boy leaders based on a notion that U.S.  citizens protesting the outcome of an election qualified as an attempt to "overthrow" the government.

[26] 40 U.S.C.  § 5104(e) (2) Violent entry and disorderly conduct.--An individual or group of individuals may not willfully and knowingly--
(A) enter or remain on the floor of either House of Congress or in any cloakroom or lobby adjacent to that floor, in the Rayburn Room of the House of Representatives, or in the Marble Room of the Senate, unless authorized to do so pursuant to rules adopted, or an authorization given, by that House;
(B) enter or remain in the gallery of either House of Congress in violation of rules governing admission to the gallery adopted by that House or pursuant to an authorization given by that House;
(C) with the intent to disrupt the orderly conduct of official business, enter or remain in a room in any of the Capitol Buildings set aside or designated for the use of--
(i) either House of Congress or a Member, committee, officer, or employee of Congress, or either House of Congress;

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

and evidence by DOJ prosecutors.  Knowing that the Secret Service had never formally "restricted" the Capitol on January 6, Garland's and Graves' prosecutors retreated to a contrived argument that the Capitol Police had restricted the Capitol on January 6th on behalf of the Secret Service.[27]

85.    While the D.C. Circuit later upheld this artifice,[28] at trials of J6ers, prosecutors presented a preposterously-large, "restricted area" concept map around a single protectee (Vice President Mike Pence) (who was as far as a half-mile or more away from most J6ers at any given time).[29]

86.    Garland and Graves' use of §1752(c)(B) yielded absurd results.  For despite the Garland DOJ's concocted claim that the Capitol Police were proxies for the Secret Service in "restricting" the Capitol on January 6, the Garland DOJ simultaneously argued that the Capitol Police had no authority to 'unrestrict' any area of the Capitol, such as by opening doors, opening barricades, or inviting J6ers into the Capitol.  As a result, many innocent J6ers, including the Plaintiffs, here, were wrongly convicted through trickery if not entrapment.

---

[27] At J6 criminal trials, GARLAND and GRAVES (DOJ) presented nothing but a memo announcing a construction closure on the west side and a series of emails announcing the scheduled movements of V.P.  Pence as supposed evidence of the "restrictions."

[28] United States v.  Neely, No.  23-3166 (D.C.  Cir.  Dec.  27, 2024) (affirming J6 Defendant Darrell Neely's conviction under 18 U.S.C.  §  § 1752(a)(1) despite the fact that the restrictions had not been designated solely by the Secret Service).

[29]    Note that for a year, the first J6 indictments falsely alleged there were TWO Secret-Service protectees at the Capitol: Kamala Harris and Mike Pence.  However, it was finally revealed that Kamala Harris had been at the DNC headquarters during the time and not at the Capitol.  Upon information and belief, government officials had secretly staged a false flag operation involving Kamala Harris and government-placed "pipe bombs" at the DNC.  However, for reasons unknown, these government officials had canceled the scripted pipe bomb event or altered their intended storyline.  Of course this means that for an entire year, the Defendants presented false statements and fabricated evidence to grand juries regarding the location of V.P.-Elect Harris.  Throughout 2022, the DOJ returned to the grand juries to obtain superseding indictments to correct this false information.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

87.    Thus, each J6 criminal prosecution was a collection of absurdities and fabrications. In J6 trials, prosecutors asserted that the mere presence of whiffs of smoke or pepper spray or sounds of alarms ringing, or even the sight of rolls of plastic fencing laying on grass nearby were proofs of the mythical "restrictions."  Under Graves' supervision, prosecutors knowingly deceived jurors and judges by emphasizing signs which were not seen by individual J6ers, but which were erected, but taken down, hours before J6ers arrived, or were hundreds of yards away, or laying on the ground.

**The Defendants' Misuse of 18 USC §1512(c)(2)**

88.    The Defendants also maliciously utilized a felony punishable by 20-year sentences of imprisonment, "obstruction of an official proceeding" under 18 U.S.C. §1512(c)(2) to punish J6ers who refused to immediately plead guilty to lesser charges, among other things.

89.    From January 7, 2021, to January 20, 2025, the Defendants the United States, Wray, Garland and Graves maliciously prosecuted Baez, Black, Evans, Gunby, Thomas, and Todd with the bogus charge, "obstruction of an official proceeding" under 18 U.S.C. §1512(c), without probable cause.

90.    The statute was drafted by Congress as part of the Sarbanes-Oxley Act of 2002 following the accounting and auditing fraud revelations involving Enron and Arthur Andersen LLP.  The legislative intent of the Act was to apply to evidence-destruction, bribery, or witness tampering associated with corruptly influencing official proceedings, resulting in erroneous outcomes.

91.    Garland's prosecutors deployed the statute as an extremely punitive disorderly conduct law and a tool for compelling innocent J6ers to plead guilty to crimes they didn't commit. Prosecutors admitted that they used the same evidence for §1512 prosecutions as they did for

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

misdemeanor disorderly conduct prosecutions.   However, they used the threat of §1512 prosecutions to punish J6ers who defended themselves.[30] And the chilling shockwaves of these

---

[30] Upon information and belief, at least three dozen J6ers (perhaps 60 to 70 percent of all alleged misdemeanants who demanded trials) were charged with the bogus felony charges when they turned down misdemeanor plea offers. Tommy Frederick Allan; John D. Andries, Stephanie Baez, Richard Barnett were charged with misdemeanors; then superseded with felonies. (Sentenced to 45 mos.) Damon Michael Beckley, James Bonet, Larry Brock, Therese Borgerding, Dominic Box, Sara Carpenter, Jennifer Cudd started with two misdemeanors, which were quickly superseded with felony charges when Cudd indicated she would defend herself. David Davis, Derrick Evans, Simone Gold, Daniel Goodwyn, Derek Gunby, Brian Gunderson, Joseph Irwin, Leo Kelly, Deborah Lee, Larry Ligas, Kevin James Lyons, and Patrick Montgomery all had similar experiences. Darrell Neely was initially charged with 5 misdemeanors, then superseded with felony § 231 counts after declining plea offers (ultimately acquitted at trial of the felony § 231 count.). Michael Oliver as was charged with 4 standard misdemeanors on 12/8/21. A year later, after rejecting a plea, Oliveras was charged with a felony §111 assault charge, ultimately sentenced to 5 years. Nicholas Rodean was charged with misdemeanors on 01/29/21 and then indicted on March 19, 2021, with §1512 and felony destruction of property charges. Mark Sahady was charged with misdemeanors until rejecting a plea; then his misdemeanors were superseded with a §1512 charge. Grayson Sherrill was charged with 4 standard misdemeanors on 04/06/21 which were then superseded on 12/15/21 with several felonies. Hatchet Speed was charged with 4 standard misdemeanors, then hit with §1512 charge after rejecting a petty misdemeanor plea offer. Christopher Spencer was charged with 4 standard misdemeanors on 02/23/21 which were superseded with a §1512 charge on 03/10/21. Yvonne St. Cyr was charged with two misdemeanors on Feb 12, 2021, offered a probation plea deal and hit with two felony §231 charges in May 2022 upon rejecting an offer. St. Cyr was convicted on all counts by jury in March of 2023 and sentenced to 30 months in prison. John Strand was charged with two misdemeanor and then with additional §1512 counts. He was offered a misdemeanor "entering and remaining" deal but rejected it. (Co-Defendant Simone Gold accepted and got 60-days). Strand got 32 months in prison. John George Todd III was charged with the four misdemeanors for two years and then, just nine days before trial after rejecting a plea offer, was charged with a 20-year-felony, 18 U.S.C. §111(b) assault causing bodily injury (officer cut his own finger inside the Capitol while tugging at Todd's tiny fiberglass flagpole). Later, prosecutors added a §1512 obstruction charge after Todd asserted privilege to testify before grand jury. Todd was ultimately sentenced to 5-year prison term. Anthony Robert Williams was charged on 3/24/21 with 4 misdemeanors; then superseded on 5/26/21 with §1512 and ultimately sentenced to 5 years imprisonment. After *Fischer* nullified Williams' conviction, DOJ vindictively superseded again with felony §231 charge on 12/18/24.

27

vindictive charging decisions reverberated throughout the J6er community, causing many innocent J6ers to falsely plead guilty to crimes they did not commit.

92.    The Supreme Court recognized the United States' improper use of §1512 on June 28, 2024, striking down the application of §1512(C)(2) except in cases where "the Defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in an official proceeding." *Fischer v. United States*, 603 U.S. __ (June 28, 2024).

**Garland's DOJ refused to drop its §1512(c)(2) prosecution against Stephanie Baez even after the Supreme Court held that the statue didn't apply to political demonstrating.**

93.    Even after the application of §1512 to political demonstrations was struck down in *Fischer*, Garland's prosecutors refused to drop the charge against Baez.  Upon a farcical notion that Baez' Instagram posts indicating Baez was proud for helping delay the J6 ballot certification constituted proof that Baez had "impaired the availability or integrity. . . of records, documents, objects, or. . . other things used in the proceeding."

94.    Federal prosecutor Sam White refused to delay trial even after Trump's reelection, maliciously insisting on a trial in December 2024.  Baez was subsequently acquitted of the bogus, vindictive charge on January 17, 2025 (three days before Trump's inauguration), without needing

---

There are also a handful (e.g., Nicholas DeCarlo, Nicholas Ochs, Robbie Norwood, and Williams (above)) who briefly overturned their felony convictions (due to the Supreme Court's *Fischer* decision) and then were poised for release or retrials on misdemeanors—only to be charged with other superseding felony charges.

This list is substantially larger than the number of J6ers who were allowed to have misdemeanor trials (reported to be around 23).  *See* Michael Kunzelman, "To plead or not to plead? That is the question for hundreds of Capitol riot The Defendants," *AP News*, Jan. 5, 2024, https://apnews.com/article/capitol-riot-anniversary-sentencing-data-c0a60a2ba68a70645bd5f9e5bcc45324 (accessed 10/25/2025).

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

to present any defense evidence.

95. In addition to the case of Baez, the United States also knowingly and maliciously caused bogus §1512 prosecutions to be instituted against Thomas, for Thomas' mere act of expressing a desire that the election certification be fair and honest, and against Black for simply asking God to absolve Congress of evil spirits. (All three—Baez, Black, and Thomas—were acquitted at trial of the malicious- charge.) The Defendants United States, Garland, Graves, and Valentini maliciously charged the Plaintiff Treniss Evans with the bogus crime, which forced Evans to falsely plead guilty to a misdemeanor.

96. Gunby and Todd were both vindictively hit with false §1512 charges when they exercised their constitutional rights to jury trials and (in Todd's case) to testify before a grand jury.

**Misuse of 18 U.S.C. §  §231 and Brady violations to conceal economic prosperity brought by J6ers**

97. Prosecutors also maliciously misused the federal rioting statute, 18 U.S.C. §  §231, which criminalizes resistance to authorities during a "civil disorders" which "affect commerce." Congress obviously contemplated that the statute would apply to typical riots with property damage, looting and arson in mind. Yet in J6 prosecutions, Biden's DOJ concealed and withheld evidence that J6ers had boosted the local D.C. economy, bringing profitability to the city's hotel and restaurant industries which hadn't been seen for months prior and after.

**The Biggest Mass Brady Violation in Legal History.**

98. Although prosecutors are under constitutional obligations to disclose exculpatory evidence to the Defendants, Garland, Graves, and their underling prosecutors knowingly withheld the most basic exculpatory evidence from accused J6ers, including evidence that refuted central features of their false allegations; including:

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

a.      Evidence that the DOJ had been carefully planning the J6 event since at least August 2020,[31] well prior to the election, and had planted 274 undercover government operatives and agents amidst the crowds on January 6, 2021.[32]  The Defendants concealed the information for years.  Former FBI Director Wray lied and lectured congressmen for accusing the FBI of planting informants or agents inside the massive crowd of Trump supporters on January 6, 2021.  In a bold statement that directly contradicts multiple official sources, FBI Director Christopher Wray falsely testified before Congress in July 2023, that he "does not believe" undercover FBI agents were present at the U.S. Capitol on January 6.  These lies were finally revealed in September 2025, when facts showed there were 274 undercover FBI at the scene; after hundreds of J6ers had been misled into falsely pleading guilty to crimes they did not commit.

b.      Evidence showing the Defendants' claims of "140 officer injuries" were bogus and exaggerated, and that the most serious injury suffered by any officer on J6 was a broken finger. The most common police injury was "pain." The second most common was "soreness."

c.      Evidence from pre-event and post-event meetings which involved acknowledge-ment of exculpatory and material facts (including wrongdoing and excessive force by police which

[31] See John Solomon and Steven Richards, "FBI Secretly Prepared for Disputed Election and Political Violence in 2020, Bombshell J6 Memos Show," *Just the News*, Feb 9, 2026 (saying the FBI conducted a tabletop exercise in summer 2020 that led to development of strategies like undercover informants and mass prosecutions for minor crimes that it would later use with the Jan. 6 Capitol riot).

[32] Documents were declassified on September 25, 2025 which revealed that there were some 274 undercover plainclothes FBI agents among the crowds on January 6.  This withheld evidence led criminal The Defendants (and defense attorneys) to falsely plead guilty or counsel J6ers to falsely plead guilty.  The Defendants had concealed the information for years.  Former FBI Director WRAY lied and lectured House Republicans for accusing the FBI of planting informants/operatives/agents inside the massive crowd of Trump supporters on January 6, 2021.
    In a bold statement that directly contradicts multiple official sources, FBI Director Christopher Wray testified before Congress in July 2023 that he "does not believe" undercover FBI agents were present at the U.S.  Capitol on January 6

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

stoked J6 violence).

d.      Evidence (including the presence of hundreds of armed, *filming, recording*, plainclothes agents on Jan. 6).[33]

e.      Evidence of the presence of large numbers of Antifa and Black Lives Matter rioters among the Trump-supporting J6ers, who instigated aggressive and offensive conduct for which Trump supporting J6ers were accused.

f.      Text messages and other communications by U.S. Secret Service about the events of January 6, including "pipe bomb" claims, the movements of Trump, Pence, and Harris, and the falsity of restricted areas at the Capitol.

99.     The nondisclosed evidence that J6 prosecutions had been staged, set up, and pre-planned in advance in wargaming and tabletop exercises months in advance was also concealment that the J6 *prosecutions were a conspiracy, administratively planned, in advance rather than legitimate acts of court advocacy* in response to crimes.  Not only did this withheld evidence keep J6ers from proving entrapment; but the evidence showed planning to entrap J6ers, in advance, by the United States and its officers.

100.    As a consequence of these Defendants withholding this exculpatory evidence, many defense lawyers counseled J6ers to falsely plead guilty.  And those J6ers who went to trial (including the Plaintiffs Black, Brooks, Cruz, Gunby, Thomas, and Todd) became wrongly convicted of crimes they did not commit; and Millard became wrongly charged with crimes he did not commit.

---

[33] Upon information and belief, 274 plainclothes FBI agents filmed J6 events and recorded their and others' expressions, excited utterances and present-sense impressions which would have been exculpatory for many J6ers.  Upon information and belief, these withheld recordings would have likely shown that the Capitol grounds were not as restricted as government trial testimony had claimed.  Yet these many recordings were hidden and withheld from J6 defense counsels.

31

**DOJ's Pattern of Vindictive escalation of charges and penalties for the Plaintiffs who tried to defend themselves**.

101.    As described above, the Plaintiffs Baez, Gunby and Todd were initially charged with just misdemeanors.  However, when they rejected petty-misdemeanor (i.e., up to 6 months' imprisonment) plea offers and exercised their right to trials, the Garland DOJ punished them with felonies in retaliation and without probable cause.  In most cases (as in Baez, Gunby, and Todd's cases), the Garland Justice Department charged these alleged misdemeanants with 20-year felonies.  This 40-to-1 ratio was the most extreme ratio of escalation ever registered in any case in the history of federal courts.[34]

102.    Almost all J6ers who demanded trials received jail sentences.  And the majority of J6ers who were initially charged with misdemeanors found themselves facing additional, felony, charges when they exercised their constitutional right to trials.  This occurred amongst a jury pool composed of more than 90% Democratic voters where the jury conviction rate for J6ers was 100 percent.  Prison sentences for J6ers who demanded trials on felonies averaged two years longer than sentences of J6ers felons who pled guilty.

103.    This landscape of steep charge escalation and punishment led many J6ers to

---

[34] No previous court case (including those which reversed convictions and struck down prosecutions) had ever considered a 40-to-1 ratio of vindictive charge escalation.  Compare *North Carolina v.  Pearce*, 395 U.S.  711 (1969) (invalidating two convictions: Pearce, convicted of assault with intent to rape and sentenced to 12 years and then later given an 8-year term without credit for time served[34] after winning an appeal; and Rice, sentenced to 10 years for burglary but then given 25 years after winning his appeal). *Blackledge v.  Perry*, 417 U.S.  21 (1974) (finding due process violation where The Defendant sentenced to 6 months for misdemeanor assault was given 5-7 years for felony assault with a deadly weapon with intent to kill (over the same facts), after appealing). *Bordenkircher v.  Hayes*, 434 U.S.  357 (1978)(The Defendant rejected 5-year plea offer and was then indicted as career offender and sentenced to life imprisonment);[34] *United States v.  Goodwin*, 457 U.S.  368 (1982) (involving an offer of petty assault (up to 1 year), which became assaulting federal officer (up to 8 years), upon rejection of the offer).

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

denounce the prosecutions and publicly proclaim they were wrongly convicted. And in response, these Defendants threatened further retaliation against them.

**The Defendants turned J6 Sentencing Hearings into Pageants of Exaggeration, Fabrication, and Blood Lust.**

104.    At Joe Thomas' sentencing hearing, AUSAs Samantha Miller and Sean McCauley offered pictures of Thomas' hands full of knives on January 6. The pictures showed Thomas early in the day at the Ellipse displaying a number of pocketknives in his hands. Those prosecutors knew  (where attendees at Trump's speech had ditched their pocket knives outside the venue because of metal detectors. This innocent photo was used by prosecutors to mislead the court into a false impression that Thomas had brought multiple knives as weapons on January 6.

105.    Black carried a sheathed work knife during the event (as he does every day as a landscaper), and later freely admitted this. (The government would have had no knowledge of Black's innocent knife possession without Black's admission). However, the Defendants charged Black with felonies for having (but never touching or using) the knife on his person at the Capitol. After Black was acquitted at trial of the bogus §1512 "obstruction of an official proceeding" charge, the two 'misdeanors-while-carrying-a-knife' convictions became the most serious charges for Black. Black was sentenced to an outrageous 22-month prison term.[35]

---

[35] Joshua Black was also sentenced to three years of supervised release, $2,000 in restitution, and a fine equivalent to the entire crowdfunding proceeds he received from his appearance on a podcast, totaling $320.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

**The Defendants demanded seizure of every penny crowdfunded for legal defense, as punitive fines.**

106.    J6ers had difficulty finding public defenders who would zealously defend them. And in every case where J6ers sought to raise funds for their defense, the Defendant prosecutors demanded that every penny raised for legal defense be seized and turned over to the government. Samantha Miller and Sean McCauley did this to Thomas, who was sentenced to a $20,000 fine for his informative pre-sentencing social media posts

**The DOJ monitored social media, seeking to silence and punish attempts by the Plaintiffs (and defense counsel) to alert the public regarding these injustices.**

107.    Under the Constitution, an accused has a 1st, 5th (due process) and 6th amendment (fair trial/counsel/defense/confrontation) right to alert the public regarding injustices in the federal courts.  Accused persons also have a constitutional right to plead for help in defense.  *The public also have* 1st and 6th amendment rights to be informed of injustices and to donate funds to fight injustice.  However, the Defendants Miller, McCauley, and Valentini scoured through J6ers' social media posts to identify memes, statements, podcasts, or interviews by each J6er regarding the prosecutions.  Prosecutors filed pleadings to punish those J6ers who tried to alert the public regarding their treatment.  Miller, McCauley, Disney and Valentini even filed pleadings to sanction criminal defense lawyers who alerted the public about the unjust prosecutions.

**Fabricated enhancements to increase J6er sentences.**

108.    In almost every trial where any J6er testified in his own defense (often because the J6er was forced to, because the DOJ systematically intimidated defense witnesses or precluded J6ers from presenting defense arguments unless the J6ers took the witness stand), the Defendants claimed the J6er lied during the testimony—invariably pointing at some *subjective* question—and

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

then demanded a two-point sentencing enhancement for 'committing perjury.'

109.    The Plaintiff Kenneth Joseph Thomas was forced to take the witness stand in his trial because the Defendants had precluded Thomas' defenses (1st amendment, passive resistance protest) unless Thomas testified regarding Thomas' intent).    Then, at Thomas' sentencing, Samantha Miller and Sean McAuley asserted that Thomas had 'committed perjury' by saying (in Thomas' opinion) the grounds were unrestricted at the time Thomas entered them (which was objectively true).  Thomas was then given the 2-point 'perjury' sentencing enhancement and was sentenced to almost five years imprisonment for what was essentially disorderly conduct at the worst possible offense.

110.    Black, whose face and mouth had been torn to pieces on January 6 and who was convicted of misdemeanors (entering and remaining in a restricted area and disorderly conduct) which were enhanced to felonies due to Black's mere possession of a small knife (which Black carried every day in his work as a landscaper).  Prosecutors then demanded Black be sentenced for <u>acquitted</u> conduct (just as was Thomas).  Thus, notwithstanding Black's acquittal of the malicious Obstruction-of-Official -Proceeding charge, Black was sentenced to 22 months in federal prison.

**Efforts to maximize J6er sentences by entrapment.**

111.    Not only did the Defendants retaliate against J6ers who dared to demand trials.  Not only did the Defendants fabricate evidence and use false statements and evidence at arraignments, trials and sentencing hearings, but the Defendants also sought to entrap J6ers into violating court conditions in order to maliciously add to J6ers' sentences.

112.    In March 2023, while the Plaintiff Treniss Evans III was awaiting sentencing related to J6, FBI Agent Sam Ukylee and Agent Lucas arranged for Evans to reclaim his seized property at San Antonio FBI headquarters March 19, 2023.  While knowing that Evans was represented by

counsel, and that Evans was subject to restrictions prohibiting contact with law enforcement without approval and requiring Evans to report any contact with law enforcement to his probation officer. The agents delayed Evans and then cornered him in an interrogation room. There, using aggressive, intimidating tactics, Agent Lucas pressured Evans to become a confidential informant.

113. Mr. Evans was offered increasingly large sums of cash to violate court orders. Knowing that Evans was subject to the conditions described above, the FBI agents instructed Evans to not inform the court about their contact.

114. When Evans alerted Judge Friedrich via sworn declaration, the Defendants, including AUSA Francesco Valentini and Christopher Brown lied to cover up the affair. Valentini and Brown knowingly concealed from the court the mitigating fact that Evans had assisted U.S. Marshals in apprehending a prison escapee on the FBI's Most Wanted list while on pretrial release. At sentencing, Valentini portrayed Evans as a vigilante, a false characterization directly contradicted by law enforcement records. The purpose of this deception was to ensure that Evans was given a harsher criminal sentence. Mr. Evans lies in fear of government retaliation to this day.

**Property returned damaged, broken, and missing.**

115. Upon their release from the malicious charges, the Plaintiffs all sought the return of property which had been seized by the FBI during their cases. The FBI returned their property damaged, missing and/or broken. The FBI returned cell phones and computers to Thomas with hard drives and files destroyed or missing.

116. Upon information and belief, the hard drives and SIM cards were missing because the Defendants withheld, hid or destroyed them. Those drives and SIM cards contained images and videos taken on January 6 which refuted and debunked the Defendants' bogus narratives. Thus, those acts of damage and theft constituted Brady violations as well as takings and/or

negligence.

117.    John Todd's property was returned missing a cell phone SIM card containing video from day of arrest in 2021.

118.    Kenneth Joseph Thomas' One-Plus McClaren cell phone (valued at $2,000) was returned by the FBI damaged and unusable.  Additionally, Thomas' mail was never returned and is missing.

119.    Glenn Brooks' cherished family heirloom Revolutionary War black powder pistol was returned broken and unusable.

120.    Stephanie Baez' property was returned damaged, and her clothing was returned stained.

121.    Derek Gunby's Acer laptop computer and screen were returned damaged and inoperable.

122.    Andrew Millard's property was returned by the FBI in February 2025 with missing files.

123.    All of these items were fully functional and in good condition prior to the FBI's seizures.

**Other damages.**

124.    As a direct and proximate result of the Defendant's tortious conduct, each the Plaintiff has suffered and continues to suffer damage in excess of $1 million, including but not limited to medical expenses, lost wages and income, pain and suffering, severe emotional distress, loss of liberty, reputational harm, and other consequential damages. loss of employment and income, and substantial legal defense costs.

125.    The Plaintiffs Kenneth Joseph Thomas, Treniss Evans, Gleen Brooks, and John

37

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

George Todd suffered loss of consortium with their spouses.  Both Brooks' and Todd's wives abandoned them during these malicious prosecutions.

126.    At least six J6ers committed suicide due to the trauma.[36] The Plaintiff John George Todd attempted suicide and was institutionalized for mental health treatment twice during the prosecution.  The Plaintiff Stephanie Baez miscarried five times during her prosecution.

127.    The Plaintiff demands a trial by jury on all issues so triable.

**Specific Allegations as to Each Plaintiff**

128.    In each of the Plaintiffs' cases, the J6 criminal proceedings terminated in the Plaintiffs' favor, either by dismissal with prejudice, acquittal on key counts, or executive clemency that nullified the convictions and restored the Plaintiffs' rights.

129.    The prosecutions were initiated and pursued without probable cause, with actual malice, and for the improper purpose of politically persecuting the Plaintiffs because of their support for then-President Donald J. Trump and their exercise of constitutional rights.  The following summarizes each the Plaintiff's prosecution and its termination in their favor:

130.    Stephanie Baez was charged on May 28, 2021, with "four standard misdemeanors" for two-and-a-half years.  Baez turned down plea offers to a single petty misdemeanor, exercising her right to trial.  Then on September 14, 2023 (just 4 days before pretrial conference and 12 days before her scheduled 9/26/23 trial), prosecutor Sam White, under guidance and direction from Garland and Graves, punished Baez by filing a malicious 20-year felony charge without probable cause, "obstruction of an official proceeding."  Under duress, Baez entered an open guilty plea to the four misdemeanors in hopes the malicious §1512 charge would be dropped.

---

[36]J6ers Mark Aungst, Chris Stanton, Jord Meachum, Mark Aungst, David Kennedy Homol, and Matthew Perna took their own lives during the prosecutions.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

131.    However, these prosecutors refused to dismiss the malicious felony charges even after the Supreme Court sharply narrowed the §1512 statute in *Fischer v. United States* in June 2024.  Although the Court held that the farcical obstruction charge did not apply to mere delay of proceedings by protesting, White continued under a theory that Baez' Instagram posts about the ballot-certification process translated to document obstruction under the statute.

132.    Even after President Trump won re-election in November 2024 (upon promises to pardon the J6ers), these prosecutors refused to postpone Baez' trial, causing Baez to unnecessarily spend thousands of dollars.

133.    During Baez' trial in December 2024 a congressional archivist admitted on cross-examination that there were multiple exact sets of the ballot certificates around D.C. which could be easily requested if the set of certificates at the Capitol became "impaired."[37]  Thus the government's entire theory behind hundreds of cases and many decade-long prison sentences (that J6ers came not to protest or persuade but to stage a 'coup' and 'overturn' the 2020 election by switching the ballot certificates) was an impossibility.  (And no J6er ever approached the certificates or said he was aiming to do so on Jan. 6, 2021.)

134.    Senior Judge Paul Friedman granted Baez' motion for acquittal (without Baez presenting any defense) on January 17, 2025 (just 3 days before inauguration); and the entire case was dismissed on January 22, 2025.

135.    Black's face and mouth were blown to pieces by a projectile fired by Capitol Police illegally on January 6.  Black bled profusely on the marble steps of the west terrace where dozens of people slipped on Black's blood.  The Defendants nonetheless maliciously charged Black with

---

[37] And of course the proceeding was mostly ceremonial, as the contents and count of the certificates was widely known by millions, having been reported and broadcast on every news platform.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

bogus crimes, including "obstruction of an official proceeding" under 18 U.S.C. §1512(c)(2). Black was acquitted of the false charge at trial and later received executive clemency terminating the entire unjust prosecution favorably.

136.    Glenn Brooks was convicted of four misdemeanors at trial and appealed. When Trump's executive clemency was granted, Brooks objected. Brooks' entire case was dismissed, over Brooks' objection, and the Supreme Court denied certiorari when Brooks sought to revive his appeal.

137.    Lloyd Casimiro Cruz Jr was charged with two misdemeanors on Feb 25, 2022, and convicted of both charges at a stipulated bench trial held on 1/14/2023. Cruz was sentenced to 45 days in jail and appealed focusing on the geofence warrant. Court of appeals vacated the appeal on Jan 31, 2025, upon government motion (and over Cruz' objection). District Court dismissed the entire case on Feb. 4, 2025.

138.    Treniss Evans was maliciously charged with the four standard misdemeanors plus the §1512 "obstruction" charge. Evans was coerced into falsely pleading guilty to a misdemeanor, "entering and remaining in a restricted area." While Evans awaited sentencing, the United States and Agents Lucas and Ukylee attempted to entrap Evans into violating his release conditions (as described above). Prosecutors Valentini and Brown misled the court at Evans sentencing. Evans was sentenced to jail but was unconditionally pardoned by President Trump on January 20, 2025, when Trump declared the J6 prosecutions a "grave national injustice."

139.    Derick Gunby was prosecuted for misdemeanors for three years. However, prosecutors filed a retaliatory superseding indictment (containing the malicious 20-year-felony §1512(c)(2) obstruction charge) just two weeks before Gunby's trial after Gunby turned down a petty-misdemeanor offer. After Gunby appealed the case was dismissed (over Gunby's objection).

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

140. Andrew Millard was wrongly charged with four misdemeanors relating to January 6 in 2024. The false charges were dismissed with prejudice on March 26, 2025, upon government motion (over Millard's objection), constituting termination in Millard's favor.

141. When Kenneth Joseph Thomas rejected DOJ's plea offers, the DOJ added additional charges. Thomas went to trial facing twelve criminal counts, including five counts of assaulting federal officers (for five acts of momentarily brushing against police shields or armor). Thomas was prevented from presenting a First Amendment passive-resistance defense unless he testified on the witness stand.

142. At trial Samantha Miller and Sean McCauley—under direction from Graves and Garland—presented Metropolitan Police Officer Campanele, who falsely accused Thomas (for the first time, without notice, in front of a live jury) of property destruction for allegedly cutting a tarp with a knife. (The false accusation was entirely a surprise and Thomas had been provided with no discovery on the matter.) Thomas' defense team scrambled and showed proof that Officer Campanale had himself cut the very tarp that he falsely accused Thomas of cutting.

143. Prosecutors Samantha Miller and Sean McAuley—under direction from Graves and Garland—also presented a Prince Georges County, Maryland officer named Ainsworth who falsely claimed he was knocked to the ground by Thomas on January 6. However, camera footage proved Thomas was some ten feet away from Officer Ainsworth at the time Ainsworth fell to the ground; and that *other J6ers* had more direct contact with Ainsworth than did Thomas.

144. These Prosecutors concealed the fact that another J6er, Donnie Wren, was on trial two floors up at the same time for being the person who knocked Officer Ainsworth to the ground. Thomas learned of the Wren trial in the final days of his own trial, after Ainsworth had given false testimony at Samantha Miller's and Sean McAuley's direction.

41

145.   The jury fully acquitted Thomas of the malicious §1512 obstruction charge as well as all alleged crimes of violence.  The jury was hung regarding the malicious claim that Thomas knocked Ainsworth to the ground.  Nonetheless, Thomas was wrongly convicted of four bogus "assaulting federal officer" counts, and at sentencing these prosecutors demanded that Thomas be imprisoned for acquitted conduct.  Thomas was also punished with a false 'perjury' enhancement for saying he perceived the Capitol grounds to be unrestricted.  Thomas' appeal was vacated and his entire case dismissed (over his objection) in 2025.

146.   John George Todd was vindictively, selectively and maliciously charged with TWO false 20-year felonies when he demanded a jury trial on his misdemeanors.  (Just days before his scheduled misdemeanor trial (after waiting 3 years and rejecting petty-misdemeanor offers) when he demanded a jury trial.  The jury deliberated for five days, until the jury foreman sent a note indicating that his fellow jurors were deliberating over information outside the trial.  Todd's §1512 conviction was dismissed on the United States' motion prior to sentencing.   Todd's other convictions were also dismissed in 2025 after Todd appealed.

147.   As a direct result of these malicious, selective, and vindictive prosecutions, each Plaintiff suffered severe damages, including loss of liberty (incarceration or pretrial detention), loss of employment and income, emotional distress, reputational harm, legal defense costs exceeding hundreds of thousands of dollars, and ongoing collateral consequences.

148.   The criminal proceedings have terminated in all of the Plaintiffs' favor.  The appeals of Baez, Brooks, Cruz, Todd, Gunby, and Thomas were vacated and dismissed in their favor.  Mr. Black was acquitted of the §1512 charge and then had the rest of his charges pardoned.  Mr. Evans' coerced conviction was fully and unconditionally pardoned on January 20, 2025, which constitutes a favorable termination for purposes of a malicious prosecution claim under applicable law.  Mr.

42

Millard's case was dismissed before trial in his favor in 2025.

## CLAIMS FOR RELIEF
## COUNT I – MALICIOUS PROSECUTION
### (FTCA: All the Plaintiffs Against United States)

149.    The Plaintiffs aver all of the allegations stated in Paragraphs 1 through 127, above and incorporate them in this Count as though they are fully restated herein.

150.    United States' employees (including all the Defendants described above) initiated criminal proceedings against all of the Plaintiffs.

151.    The proceedings were initiated without probable cause.

152.    The proceedings were continued with actual malice and for improper purposes (political persecution, retaliation, and to deter protected First Amendment activity).

153.    The proceedings terminated in the Plaintiffs' favor.

154.    The Plaintiffs suffered damages as a direct and proximate result.

155.    The United States is liable under the FTCA for these torts committed by its investigative and law enforcement officers within the scope of their employment.  28 U.S.C. §2680(h).  The United States' officers and agents fabricated and exaggerated evidence, withheld exculpatory material, and pursued the cases despite the absence of probable cause that the Plaintiffs had committed the crimes alleged.

156.    The criminal proceedings have terminated in the Plaintiffs' favor through acquittals, dismissals, and presidential pardons issued on January 20, 2025, which constitutes a favorable termination for purposes of a malicious-prosecution claim.

157.    As a direct and proximate result of the Defendant's tortious conduct, each the Plaintiff has suffered and continues to suffer damages in excess of $1 million, including but not

43

limited to medical expenses, lost wages, pain and suffering, emotional distress, loss of liberty, loss of consortium, and other consequential damages.

**COUNT II – SELECTIVE PROSECUTION / ABUSE OF PROCESS**
(FTCA – Against United States; Constitutional Claim Against Individual the Defendants Garland, Graves and Wray)

158.    The Plaintiffs aver all of the allegations stated in Paragraphs 1 through 127, above and incorporate them in this Count as though they are fully restated herein.

159.    The prosecutions described in this complaint were selectively initiated and pursued against the Plaintiffs because of the Plaintiffs' political affiliation, viewpoint, and association with the Trump candidacy or movement, while similarly situated individuals of opposing political views were not prosecuted.  This constitutes selective prosecution and abuse of process under District of Columbia common law and violates the Fifth Amendment's equal protection guarantee.

160.    As to the individual Defendants Garland, Graves and Wray, this Count is also brought directly under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for violation of The Plaintiffs' constitutional rights.  The individual The Defendants are sued in their individual capacities for their personal involvement in the unconstitutional selective enforcement.

161.    The Plaintiffs suffered damages as a direct and proximate result.

**Count III - Vindictive Prosecution and
Monell-Type Failure To Train/Supervise**
(FTCA – Baez, Gunby, and Todd Against United States; Bivens Claim Against Individual The Defendants Garland and Graves)

162.    The Plaintiffs aver all of the allegations stated in Paragraphs 1 through 127, above and incorporate them in this Count as though they are fully restated herein.

163.    The Plaintiffs Baez, Gunby, and Todd were initially charged with only

44

misdemeanors. Each Plaintiff waited and prepared for years for their trials and rejected numerous plea offers. The United States and its prosecutors retaliated by filing vindictive, malicious, bogus superseding felony indictments against each Plaintiff to punish them for exercising their constitutional right to trial.

164. This was in accordance with an unconstitutional pattern and practice of the Garland Justice Department in J6 cases. Upon information and belief, the majority of J6ers who exercised their right to misdemeanor trials were similarly punished with false felony charges after exercising their rights.

165. The Defendants Garland and Graves, on behalf of the United States, implemented, directed, or failed to adequately train and supervise a policy, custom, or practice within the DOJ and U.S. Attorney's Office for the District of Columbia whereby federal prosecutors were encouraged or permitted to file superseding indictments adding felony charges against January 6 Defendants who were initially charged only with misdemeanors and who refused to plead guilty and instead demanded their constitutional right to trial.

166. This policy constituted vindictive prosecution in violation of the Fifth Amendment's Due Process Clause and was the moving force behind the unconstitutional actions against the Plaintiffs.

167. These felony prosecutions were vindictively initiated and pursued against the Plaintiffs, Baez, Gunby, and Todd (and the majority of similarly situated J6 Defendants) because they exercised their constitutional right to refuse a misdemeanor plea and demand a trial. The Defendants Garland and Graves, through unwritten policy, custom, directive, or deliberate indifference in training and supervision, caused prosecutors to file superseding felony indictments in retaliation. Garland and Graves failed to properly train and supervise prosecutors regarding the

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

prohibition on retaliatory charging decisions, despite the obvious risk of constitutional injury.

168. In each case, the criminal proceeding terminated in the Plaintiffs' favor, either by dismissal with prejudice, acquittal on key counts, or executive clemency that nullified the convictions and restored the Plaintiffs' rights.

169. Stephanie Baez spent three years charged with four misdemeanors; but just days before her misdemeanor trial, the Defendants charged her with a false 20-year felony, 18 U.S.C. §1512, for rejecting the Defendant's plea offers. Baez suffered four miscarriages during the Defendants' prosecution of her. (The Defendants refused to drop the preposterous §1512 charge *even after* the Supreme Court struck down the statute as applied to demonstrations in *Fischer v. United States*; and Baez was ultimately acquitted at trial without presenting any evidence.)

170. John George Todd was charged with just four misdemeanors for some three years. The experience was very traumatic, and Todd attempted suicide and was hospitalized twice during this ordeal. Then, with two weeks remaining before trial, prosecutor Barry Disney notified Todd that the DOJ intended to seek an additional charge against Todd: a 20-year-felony charge of 'assaulting a federal officer causing bodily injury.' the Defendants claimed the new charge was justified because they had seen video of an officer cutting his finger on fiberglass fibers from Todd's small flagpole as the officer tugged on the flagpole.

171. Having been notified that the DOJ intended to seek a false superseding indictment, Todd requested to address the grand jury. However, after Todd exercised this constitutional right, the DOJ retaliated by filing an additional TWO (2) new 20-year felonies against Todd: both the malicious bogus 'bodily injury'/finger-cut charge plus a malicious charge of "obstruction of an official proceeding" under §1512(c)(2). (The §1512 count was later dismissed with prejudice on December 2024 after the Supreme Court's Fischer decision, and the finger-cut felony was

46

dismissed in 2025 after Todd appealed).

172.    The United States is liable under the FTCA for these torts (abuse of process and malicious prosecution) committed by its investigative and law enforcement officers within the scope of their employment.  28 U.S.C.  § 2680(h).

173.    As to the individual The Defendants Garland and Graves, this Count is also brought directly under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for violation of The Plaintiffs' Fifth Amendment due-process and Sixth Amendment rights to a trial and a fair trial.  In every essence, this insidious practice deprived J6ers of their constitutional right to demand that allegations be subjected to fair adversarial trials.  The individual The Defendants are sued in their individual capacities for their personal involvement, direction, ratification, and supervisory failure.

174.    The Plaintiffs suffered damages as a direct and proximate result.

### Count IV - Federal Tort Claims Act – Negligence involving Personal Property
(Against the United States of America)

175.    The Plaintiffs aver all of the allegations stated in Paragraphs 1 through 127, above and incorporate them in this Count as though they are fully restated herein.

176.    The United States had a duty to exercise reasonable care in handling The Plaintiff's seized property.

177.    The FBI, an agency of the United States government, seized The Plaintiff's personal property following the events of January 6, 2021.

178.    The FBI seized cell phones, computers, mail and other items of property from The Plaintiffs.

179.    The United States breached its duty by failing to exercise reasonable care in handling The Plaintiffs' property.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

180.    While in federal custody, The Plaintiff's property was damaged, lost, or stolen.

181.    Kenneth Joseph Thomas' One-Plus McClaren cell phone (valued at $2,000) was returned by the FBI damaged and unusable.  Thomas' video files were taken, destroyed or deleted. Additionally, Thomas' mail was never returned and is missing.

182.    Glenn Brooks' property—including his priceless family heirloom Revolutionary War flintlock pistol—was damaged by the FBI.

183.    Lloyd Cruz' property

184.    Stephanie Baez' property, including her clothing and other property she wore and possessed on January 6, was destroyed.

185.    Andrew Millard's cell phone was returned damaged and with files missing.

186.    Gunby's electronics were returned in a damaged state.

187.    John Todd's cell phone was damaged and returned with files missing.

188.    The United States' breach of its duty caused damage to, loss of, or theft of The Plaintiff's property.

189.    As a direct and proximate result of the United States' breach of its duty, The Plaintiff has suffered damages in the amounts to be established at trial.

**PRAYER FOR RELIEF**
WHEREFORE, The Plaintiffs respectfully request that this Court:
a.  Enter judgment in favor of the Plaintiffs and against the Defendants on all counts;
b.  Award compensatory damages in an amount to be proven at trial, but not less than $1,000,000 per Plaintiff;
c.  Award punitive damages against the individual Defendants where legally permissible;
d.  Award a declaration that the United States of America's actions in damaging, losing, or stealing The Plaintiff's property violated The Plaintiff's constitutional and statutory rights pursuant to 28 USCS § 2201.
d.  Award attorneys' fees and costs pursuant to applicable law;
e.  Award pre- and post-judgment interest;
f.  Grant such other and further relief as the Court deems just and proper.

48

Dated: June 2, 2026                              RESPECTFULLY SUBMITTED,


                                                 */s/ Peter Ticktin*
                                                 Peter Ticktin, Esq.
                                                 The Ticktin Law Group
                                                 270 S.W. Natura Avenue
                                                 Deerfield Beach, Florida 33441
                                                 Switchboard: (954) 570-6757
                                                 E-mail:  PT@LegalBrains.com


                                                 */s/ Roger Roots*
                                                 Roger Roots, Esq.
                                                 The Ticktin Law Group
                                                 270 S.W. Natura Avenue
                                                 Deerfield Beach, Florida 33441
                                                 Switchboard: (954) 570-6757
                                                 E-mail:  RRoots@LegalBrains.com

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222